IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Topeka Docket)

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>               **Plaintiff,**<br><br>  v.<br><br>**THOMAS FRITZEL,<br>CASEY STEWART,<br>WESLEY LYNCH,<br>TUCKER FRITZEL,<br>DFC COMPANY OF LAWRENCE, L.C.,<br>EAGLE 1968, L.C., and<br>R&R SUPPLY COMPANY, L.C.,**<br><br>               **Defendants.** | Case No. 18-40058-01-07-CM |

### INDICTMENT

The Grand Jury charges:

Introduction:

### GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

### THE VARIOUS DEFENDANTS

1. The defendant, **Thomas Fritzel**, was a businessman and developer in Lawrence, Kansas. **Fritzel** conducts business through various entities, including, but not limited to, co-defendants **DFC Company of Lawrence, L.C., Eagle 1968, L.C.** and **R&R Supply Company, L.C.**

1

2.     Defendant, **Casey Stewart,** acted as **Fritzel's** site manager on various projects, including the development of the former Alvamar County Club into the Jayhawk Club, an exclusive private club and golf course located on Birdie Way, Lawrence, Kansas. The Jayhawk Club is owned by defendant **Eagle 1968, L.C.**

3.     Defendant, **Wesley Lynch,** is General Manager of The Jayhawk Club.

4.     In or about March 2016, a permit application for remodel was submitted to the City of Lawrence. The application listed defendant **Eagle 1968, L.C.** as the owner of the Jayhawk Club, and defendant **DFC Company of Lawrence, L.C.,** as the builder.

5.     Defendant, **R&R SUPPLY COMPANY, L.C**., is partly owned by defendant **Thomas Fritzel,** who was also the registered agent for **R&R.** The dumpsters on-site, into which regulated asbestos-containing material (RACM) was deposited for removal to an unauthorized dump site, were labeled "**R & R Supply Company."**

## RELEVANT REGULATIONS

6.     As noted above RACM is an acronym for regulated asbestos-containing material, which is regulated for handling, removal and disposition in accordance with 40 C.F.R. Part 61.140, et seq..

7.     The Clean Air Act was enacted by Congress to protect and enhance the quality of the Nation's resources so as to promote the public health and welfare. 42 U.S.C. §§ 7401, et seq.

## NESHAP

8.     The Clean Air Act authorizes the United States Environmental Protection Agency (EPA) to identify hazardous air pollutants and to establish standards to prevent or

limit the emission of hazardous air pollutants into the atmosphere. In accordance with Section 112(d) of the Clean Air Act, the Administrator of the EPA promulgated the National Emission Standards for Hazardous Air Pollutants (NESHAP), at 40 C.F.R. Part 63, 42 U.S.C. § 7412.

9. Pursuant to the Clean Air Act, asbestos has been designated as a hazardous air pollutant since 1971. 42 United States Code, §§ 7412(a)(6) and (b); 40 C.F.R. § 61.01(a).

10. Where it is not feasible to prescribe and enforce emission standards for hazardous air pollutants, in lieu of such emission standards, EPA may publish work practice standards which require that certain procedures be followed when dealing with hazardous air pollutants. These NESHAP work practice standards have the effect of emission standards. Title 42, United States Code, §§ 7412(d)(2)(D) and (h). NESHAP work practice standards have been published for demolition and renovation of certain facilities containing asbestos and for the handling of asbestos-containing materials. 40 C.F.R. §§ 61.145, 61.150.

11. NESHAP work practice standards require that certain procedures be followed in handling friable asbestos materials to prevent the discharge of asbestos particles into the ambient air. 40 C.F.R. § 61.140 et seq.

12. "Friable asbestos material" means any material containing more than 1 percent asbestos as determined using the method specified in Section 1 of Appendix E, Subpart E, 40 C.F.R part 763, Polarized Light Microscopy (PLM), that, when dry, can be crumbled, pulverized, or reduced to powder by hand pressure. If the asbestos content is less than 10 percent as determined by a method other than point counting by PLM, the asbestos content shall be verified by point counting using PLM. 40 C.F.R.§ 61.141.

13. "Regulated asbestos-containing material" (RACM) means (a) Friable asbestos material; (b) Category I nonfriable ACM that has become friable; (c) Category I nonfriable ACM that will be or has been subjected to sanding, grinding, cutting, or abrading; or (d) Category II nonfriable ACM that has a high probability of becoming or has become crumbled, pulverized, or reduced to powder by the forces expected to act on the material in the course of regulated demolition or renovation operations. 40 C.F.R. § 61.141.

14. Asbestos work practice standards apply to any owner or operator of a facility who conducts a renovation operation, when the combined amount of RACM stripped, removed, dislodged, cut, drilled, or similarly disturbed is at least 260 linear feet on pipes, 160 square feet on other facility components, or 35 cubic feet off facility components where the length or area of the RACM could not be previously measured. 40 C.F.R. § 61.145(a)(4).

15. "Renovation" means altering a facility or one or more facility components in any way, including the stripping or removal of RACM from facility components. The term "facility component" means any part of a facility, including equipment. 40 C.F.R. § 61.141.

16. "Facility" means any institutional, commercial, public, industrial or residential structure, installation or building. 40 C.F.R. § 61.141.

17. The term "facility component" means any part of a facility, including equipment. 40 C.F.R. § 61.141.

18. The asbestos work practice standards define the appropriate procedures for the

safe handling and removal of RACM during renovations so as to prevent emissions of particulate asbestos materials into the air. These work practice standards require, in pertinent part:

> a. that at least 10 working days prior to beginning asbestos stripping or removal work, or any other activity such as site preparation that would break up, dislodge, or similarly disturb asbestos material, the owner or operator of the facility provide written notice to the EPA. The notice must describe and identify the facility; include the name, address and telephone number of the facility owner and operator as well as the asbestos removal contractor; list the scheduled starting and completion dates of the renovation; describe the planned renovation and the methods to be used; describe the procedure employed to detect the presence of RACM; estimate the amount of RACM that will be removed; and list the waste disposal site at which the asbestos waste will be deposited, 40 C.F.R. § 61.145(b);

> b. that when any facility component (such as a boiler, pipe, or tank) which is covered or coated with RACM is taken from the facility, as a unit or in sections, the owner or operator adequately wet any RACM exposed during cutting or disjointing operations and carefully lower the components to the ground, without damaging or disturbing the RACM, 40 C.F.R. § 61.145(c)(2);

> c. that, when any facility component is stripped of RACM while it remains in place in the facility, the owner or operator adequately wet the RACM, 40 C.F.R.§ 61.145(c)(3); and,

> d. that, for all RACM, including material that has been removed or stripped, the owners and operators adequately wet the material and ensure that it remains wet until collected and contained or treated in preparation for disposal in accordance with applicable regulations. 40 C.F.R. § 61.145(c)(6).

19. The asbestos work practice standards also require that during the collection, processing, or packaging of asbestos-containing waste material, the owner and operator shall either discharge no visible emissions to the outside air, or:

> a. shall adequately wet and properly package the material for disposal in leak-tight containers or wrapping and label the packages in accordance with Occupational Safety and Health Standards of the Department of Labor, Occupational Safety and Health Administration (OSHA), or

> b. process asbestos-containing waste material into non-friable forms specified by applicable regulations. 40 C.F.R. § 61.150(a).

20. The waste generator must also dispose of all asbestos-containing waste material as soon as is practical at a proper waste disposal site, as specified by work practice standards, and must assure that vehicles used to transport asbestos-containing waste material to the disposal site are properly marked. 40 C.F.R. § 61.150(b) and (c).

21. Section 113(c)(1) of the Clean Air Act, 42, United States Code, Section 7413(c)(1), makes it a criminal offense to violate any of the above described work practice standards set by EPA pursuant to Section 112 of the Clean Air Act, Title 42, United States Code, § 7412.

## OBJECT OF THE CONSPIRACY

22. The object of the conspiracy was to confer the maximum value upon the co-defendant companies, and avoid the extensive costs associated with proper and legal asbestos abatement and removal procedures.

23. In the 1980s Gene Fritzel (Father of defendant **Thomas Fritzel**) and member of defendant **DFC Company of Lawrence, L.C.**, built the Alvamar Clubhouse in Lawrence, Douglas County, Kansas. In 2008, the Alvamar Country Club was in need of a new roof due to hail damage. The Board of Directors for Alvamar, approached Jay Patterson, then contractor and carpenter to oversee building a new roof on the Alvamar Country Club. Patterson was a member of Alvamar Country Club, and a resident of the area. During the bidding process, Patterson took a sample from the country club roof and submitted it to ACT labs in Lenexa, Kansas, which tested and found 75% chrysotile; that is, (RACM). The Board of the Alvamar Country Club decided not to replace the roof due to the cost to abate the asbestos.

24. In January 2016, **Thomas Fritzel** purchased Alvamar Country Club and began demolition/renovations.

25. In the fall of 2016, **Fritzel's** project manager, **Casey Stewart**, instructed workmen to tear down part of the country club roof with an excavator and dump the remains in a dumpster. It was estimated that 2,250 square feet of roofing containing (RACM) was torn down and placed in dumpsters. While the workmen were tearing down the roof, Jay Patterson, a former Alvamar member and neighbor to Alvamar, came onto the site and informed a **Fritzel** employee that they needed to stop work because the roof contained asbestos. The neighbor provided the **Fritzel** employee a copy of the sample results from 2008.

26. On March 4, 2016, Richard Herries, Golf Course Superintendent, sent an email to defendants **Thomas Fritzel** and **Wesley Lynch**, notifying them of the presence of asbestos: "The roof of the C.C. Clubhouse has asbestos."

## OVERT ACTS

26. On March 5, 2016, Richard Herries, again notified defendant **Thomas Fritzel**, about the presence of asbestos in the roof of the Alvamar clubhouse. Defendant **Wesley Lynch** approached Herries that same day and told him to never send an email with that type of content again.

27. In June of 2016, the defendant, **Thomas Fritzel**, caused defendant **Tucker Fritzel** to deliver to ACT (Asbestos Consulting and Testing) in Lenexa, Kansas, a sample of demolition material, that was ostensibly from the Alvamar project, to generate a report of a bulk sample testing of debris that showed no asbestos was contained in the sample. The defendants, **Thomas Fritzel and Tucker Fritzel,** did so, knowing that the sample taken, would not contain

asbestos, and did so for the purpose of justifying the demolition of the clubhouse of the Alvamar County Club without having to go through the expensive, but regulatory required, asbestos removal process. On October 17, 2016, defendant **Thomas Fritzel** sent this ACT report, showing no asbestos contained in the sample that Fritzel had caused to be gathered and provided, it to the Kansas Department of Health and Environment (KDHE).

28. On October 13, 2016, KDHE inspectors arrived at the Alvamar Clubhouse demolition site in response to complaints about asbestos containing materials being improperly removed from the clubhouse. They observed suspect material, took samples, took pictures, and informed a site manager that debris piles and dumpsters were not to be disturbed or removed pending results of the testing of samples. KDHE inspectors told defendant **Wesley Lynch** that due to possible asbestos violations, all debris and dumpsters were to remain in place and not be disturbed.

29. On October 17, 2016, a KDHE inspector spoke with defendant **Thomas Fritzel** and informed him of the same thing, possible asbestos and work practice violations, and stated that all debris and dumpsters were to remain in place and not be disturbed.

30. On October 18, 2016, a KDHE inspector sent an email to defendant **Thomas Fritzel** advising that an "asbestos inspection is required on renovations prior to disturbing asbestos material, this inspection needs to be conducted by an accredited inspector (and) (a)ll demo work should be on hold until this situation gets sorted out."

31. Later on October 18, 2016, a KDHE inspector received the lab results on the sample taken during the inspection on October 13, 2016, with the results showing the sample was composed of 75% chrysotile asbestos.

32. On October 19, 2016, defendants **Fritzel** and **Stewart** met with KDHE representatives to discuss an acceptable way to move forward and who instructed them to get a licensed asbestos contractor to supervise and remove preexisting debris piles and dumpsters. However, on October 25, 2016, KDHE inspected the site and determined that the asbestos debris had been removed and hauled to Hamm Landfill in Perry, Kansas, and disposed of in a site which is not approved for RACM.

33. In October of 2016, defendants **Fritzel** and **Stewart,** caused defendant **R&R SUPPLY COMPANY, L.C**., to deliver numerous loads of RACM to Ham Landfill, knowing that the loads contained RACM.

## THE CONSPIRACY
## COUNT 1

34. Paragraphs 1 through 33 are incorporated herein as though fully set forth.

35. From on or about January 2016, and continuing thereafter until the return of this indictment, in the District of Kansas, the defendants,

**THOMAS FRITZEL,**
**CASEY STEWART,**
**WESLEY LYNCH and**
**TUCKER FRITZEL,**

knowingly and willfully conspired and agreed together and with each other, to commit crimes against the United States as set forth hereinafter. The object of the conspiracy was to confer the maximum value upon the co-defendant companies, and avoid the extensive costs associated with proper and legal asbestos abatement and removal procedures. In furtherance of this conspiracy and to effect the objects of the conspiracy, the defendants committed overt acts, including but not

limited to paragraphs 24, 26, 27 and 32, as well as the substantive crimes set forth hereinafter; all in violation of Title 18, United States Code, Section 371.

### KNOWINGLY FAILED TO NOTIFY THE AUTHORITIES PRIOR TO REMOVING ASBESTOS MATERIAL
### 42 U.S.C. § 7413 (c)(2)(B)
### COUNT 2

36. Paragraphs 1 through 35 are incorporated herein as though fully set forth.

37. In or about October, 2016, in the District of Kansas, the defendants,

**THOMAS FRITZEL,
CASEY STEWART,
WESLEY LYNCH,
TUCKER FRITZEL,
DFC COMPANY OF LAWRENCE, L.C.,
EAGLE 1968, L.C., and
R&R SUPPLY COMPANY, L.C.,**

who were the owners/operators of a demolition/renovation activity, knowingly violated and caused to be violated the asbestos work practice standards by failing to provide written notification to the Environmental Protection Agency and the State of Kansas, prior to removing asbestos material from the demolition/renovation site; in violation of Title 42, United States Code, section 7413(c)(2(B) and Title 18, United States Code, section 2.

### KNOWINGLY FAILED TO WET FRIABLE ASBESTOS BEFORE REMOVING IT FROM DEMOLITION/CONSTRUCTION SITE
### 42 U.S.C. § 7413(c)(1)
### COUNT 3

38. Paragraphs 1 through 37 are incorporated herein as though fully set forth.

39. In or about October, 2016, in the District of Kansas, the defendants,

**THOMAS FRITZEL,
CASEY STEWART,
WESLEY LYNCH,
TUCKER FRITZEL**

**DFC COMPANY OF LAWRENCE, L.C.,
EAGLE 1968, L.C., and
R&R SUPPLY COMPANY, L.C.**,

who were owners/operators of a demolition/renovation activity, knowingly removed and knowingly caused to be removed asbestos and asbestos containing materials in violation of a NESHAP work practice standard for asbestos, by failing to adequately wet friable asbestos and ensure that it remained wet until collected and contained or treated in preparation for disposal in accordance with applicable regulations; in violation of Title 42 United States Code, section 7413(c)(1) and Title 18,United States Code, section 2.

### KNOWINGLY FAILED TO COMPLY WITH ASBESTOS WASTE DISPOSAL STANDARDS BY NOT DISPOSING IN LEAK-TIGHT CONTAINERS
### 42 U.S.C. § 7413(c)(1)
### COUNT 4

40.     Paragraphs 1 through 39 are incorporated herein as though fully set forth.

41.     In or about October, 2016, in the District of Kansas, the defendants

**THOMAS FRITZEL,
CASEY STEWART,
WESLEY LYNCH,
TUCKER FRITZEL,
DFC COMPANY OF LAWRENCE, L.C.,
EAGLE 1968, L.C., and
R&R SUPPLY COMPANY, L.C.,**

who were owners/operators of a demolition/renovation activity, knowingly disposed and knowingly caused to be disposed of asbestos and asbestos-containing materials in violation of a NESHAP work practice standards for asbestos, by not disposing of asbestos in non-leak-tight containers; in violation of Title 42, United States Code, section 7413(c)(1) and Title 18, United States Code, section 2.

A TRUE BILL.

Dated: June 27, 2018              s/Foreperson
                                  FOREPERSON

s/Richard L. Hathaway for
Thomas Beall, Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
District of Kansas
444 SE Quincy, Suite 290
Topeka, KS 66683
(785) 295-2850
(785) 295-2953 (fax)

(It is requested that trial of the above captioned case be held in Topeka, Kansas.)